Filed 9/11/23  In re G.H. CA4/2
*See Dissenting Opinion*

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re G.H., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E080501 |
| Plaintiff and Respondent, | (Super.Ct.No. SWJ1700118) |
| v. | OPINION |
| L.C., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Donal B. Donnelly,
Judge.  (Retired judge of the Imperial Super. Ct. assigned by the Chief Justice pursuant to
art. VI, § 6 of the Cal. Const.)  Affirmed.

Anna Rak, under appointment by the Court of Appeal, for Defendant and
Appellant.

1

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Prabhath Shettigar, Deputy County Counsel, for Plaintiff and Respondent.

INTRODUCTION

L.C. (father) appeals from the juvenile court's order terminating parental rights as to his child, G.H. (the child). Father's sole contention on appeal is that the juvenile court and the Riverside County Department of Public Social Services (DPSS) failed to comply with the duty of inquiry under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and related California statutes, particularly Welfare and Institutions Code[1] section 224.2, subdivision (b). DPSS argues it had no duty to ask extended family members about the child's potential Indian status since the child was taken into protective custody pursuant to a warrant. (§§ 224.2, subd. (b), 340.) We agree with DPSS and affirm the order terminating parental rights.

PROCEDURAL BACKGROUND

On March 1, 2021, DPSS received a referral alleging general neglect. It was reported that A.H. (mother)[2] gave birth to the child prematurely, and they both tested positive for THC. Mother reported that she smoked marijuana a month prior to giving birth. She also had a prior dependency history with another child due to her drug use. The child stayed in the Neonatal Intensive Care Unit (NICU) for weeks.

---

[1] All further statutory references will be to the Welfare and Institutions Code unless otherwise indicated.

[2] Mother is not a party to this appeal.

2

On April 21, 2021, DPSS obtained a protective custody warrant (§ 340) for the child from the Riverside County Juvenile Court and placed the child in protective custody. On April 26, 2021, DPSS filed a section 300 petition on behalf of the child, alleging she came within the provisions of subdivision (b) (failure to protect). DPSS attached a Judicial Council Forms, form ICWA-010(A), to the petition stating that ICWA inquiry had not been completed since mother and father (the parents) had not made themselves available to DPSS.

The court held a detention hearing on April 27, 2021, and found father to be the presumed father of the child. Father and mother each filed a Judicial Council Forms, form ICWA-020, stating that he/she had no Indian heritage. The court found that pursuant to their statements, ICWA did not apply to this case and the child was not an Indian child. The court detained the child in foster care and set a jurisdiction/disposition hearing.

The social worker filed a jurisdiction/disposition report on May 13, 2021, and indicated the court had determined that ICWA did not apply at the detention hearing. The social worker reported that the child was still in the hospital. She also noted that the parents refused to make themselves available during the initial investigation. Furthermore, they had not made themselves available to be interviewed for the jurisdiction/disposition report.

The court held a contested jurisdiction hearing on June 21, 2021. Father submitted on the petition. The court sustained the petition, with a minor amendment, and adjudged the child a dependent of the court. The court again found that ICWA did not apply

3

because the child was not an Indian child. The court removed the child from the parents' custody, denied reunification services to mother pursuant to section 361.5, subdivision (b)(10), and ordered reunification services for father.

The social worker filed a six-month status review report on November 16, 2021, and recommended that the court terminate services and set a section 366.26 hearing. The social worker stated that on November 3, 2021, father reported he did not have Native American Ancestry, mother had not made herself available to inquire if she had Native American ancestry, and there was no new information to indicate that ICWA applied to this case.

The court held a contested six-month hearing on December 22, 2021, found that father had made minimal progress in his case plan, terminated his reunification services, and set a section 366.26 hearing.

The social worker filed a section 366.26 report and stated the court found ICWA did not apply to this case at the June 21, 2021 hearing, and there was no new information to indicate that ICWA may now apply. The social worker also noted that during this reporting period, there was no contact from mother or father.

The court held a contested section 366.26 hearing on December 15, 2022, terminated parental rights, and ordered adoption as the permanent plan.

DISCUSSION

Under the Plain Language of Section 224.2, DPSS Was Not Required to Ask Extended

Family Members About the Child's Potential Indian Ancestry

Father argues that DPSS failed to comply with the duty of initial inquiry under section 224.2 by not inquiring of "all available and identified relatives" about the child's potential Indian ancestry.[3] DPSS responds that since the child was removed pursuant to a custody warrant under section 340, it had no duty to inquire of extended family members. We agree with DPSS.

"ICWA establishes minimum federal standards that a state court must follow before removing Indian children from their families. [Citation.] California law implementing ICWA also imposes requirements to protect the rights of Indian children, their families, and their tribes." (*In re Ricky R*. (2022) 82 Cal.App.5th 671, 678.) DPSS and the juvenile court have an "affirmative and continuing duty to inquire" whether a child in a dependency proceeding "is or may be an Indian child." (§ 224.2, subd. (a).) "The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry." (*Ricky R*., at p. 678.) We note that this case does not concern the duty of further inquiry, which arises only if the court or the department has "reason to believe that an Indian child is involved." (§ 224.2, subd. (e).)

The duty of initial inquiry begins with the initial contact when DPSS must ask "the party reporting child abuse or neglect whether the party has any information that the child

---

[3] In his brief, father vaguely refers to a maternal aunt, the paternal grandmother, two paternal aunts, and a paternal uncle, without identifying them by name.

5

may be an Indian child." (§ 224.2, subd. (a).) Under section 224.2, subdivision (b), once a child has been taken into temporary custody, DPSS must ask the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is or may be an Indian child "[i]f [the] child [has been] placed into the temporary custody of a county welfare department pursuant to Section 306 . . . ." (§ 224.2, subd. (b).)[4]

"Section 306 permits a social worker to take a child into temporary custody 'without a warrant' in emergency situations—namely, when 'the social worker has reasonable cause to believe that the child has an immediate need for medical care or is in immediate danger of physical or sexual abuse or the physical environment poses an immediate threat to the child's health or safety.' " (*In re Robert F*. (2023) 90 Cal.App.5th 492, 500-501, review granted July 26, 2023, S279743 (*Robert F*.); see § 306, subd. (a)(2).) In contrast, section 340 authorizes the juvenile court to issue protective custody warrants when a section 300 petition has been filed and "the circumstances of [the minor's] home environment may endanger the health, person, or welfare of the minor, or whenever a dependent minor has run away from his or her court-ordered placement." (§ 340, subd. (a).) A court may also issue a protective custody warrant without a section 300 petition. (§ 340, subd. (b).) "[S]ection 340 requires neither

---

   [4] In all instances, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall [also] instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

imminent danger nor the threat of physical harm for the court to issue a warrant."

(*Robert F.*, at p. 501.)

The language of section 224.2, subdivision (b), is clear. It plainly states: "If a child is placed into the temporary custody of a county welfare department *pursuant to Section 306* . . . the county welfare department . . . has a duty to inquire whether that child is an Indian child." (§ 224, subd. (b), italics added.) As we recently explained in detail in *Robert F.*, the legislative history supports the view that the Legislature intended to apply section 224.2, subdivision (b), narrowly. (See *Robert F.*, *supra*, 90 Cal.App.5th at pp. 500-503.) "The Legislature intended to impose a duty to question extended family members if the child was placed into the county welfare department's temporary custody under section 306." (*Id*. at p. 500.)

In this case, it is undisputed that the child was not placed into DPSS's temporary custody "pursuant to Section 306." (§ 224.2, subd. (b).) Rather, DPSS took protective custody of the child pursuant to a section 340 warrant obtained from the juvenile court. Section 306 played no role in this removal. Thus, as DPSS asserts, the expanded duty of initial inquiry under section 224.2, subdivision (b), does not apply. (*Robert F.*, *supra*, 90 Cal.App.5th at p. 504; see *In re Adrian L.* (2022) 86 Cal.App.5th 342, 355-357 (conc. opn. of Kelley, J.).) As a result, father's argument that DPSS violated its duty of initial inquiry under section 224.2, subdivision (b), lacks merit.

In his reply brief, father relies heavily upon *In re S.S.* (2023) 90 Cal.App.5th 694 in support of his position, and he argues that the distinction between a removal pursuant to a section 340 warrant and an emergency removal under section 306 is "a technicality at

best and a blatant skirting around the Legislative intent at worst." However, *S.S.* does not address the distinction between removals under section 340 and section 306. Further, as we thoroughly explained in *Robert F.*, the plain language of the statute, the legislative intent, and the legislative history all support our interpretation of the statutory scheme. (See *Robert F.*, *supra*, 90 Cal.App.5th at pp. 500-503.)

"We emphasize that nothing in this opinion is intended to limit DPSS's or the court's duty of inquiry prescribed by subdivisions (a) and (c) of section 224.2. As already explained, those subdivisions describe the duty of inquiry that arises in every dependency case." (*Robert F.*, *supra*, 90 Cal.App,5th at pp. 503-504.) However, "the plain language of those subdivisions does not require [DPSS] or the court to question extended family members as part of the initial inquiry in every case." (*Id*. at p. 504.) Although case-specific circumstances may require DPSS to interview extended family members under one of those subdivisions, such as when a family member contacts the social worker and volunteers that the family has Indian ancestry, father has not identified any such circumstances here. (*Ibid*.)

In sum, we conclude that section 224.2, subdivision (b), "requires a county welfare department to ask extended family members about a child's Indian status only if the department has taken the child into temporary custody under section 306." (*Robert F.*, *supra*, 90 Cal.App.5th at p. 504.) Because section 306 played no role in the child's removal here, subdivision (b) of section 224.2 does not apply.

We note that, at oral argument, father asked us to follow *In re Delila D.* (2023) 93 Cal.App.5th 953. We address the issues presented in *Delila D.* in recent opinions,

8

including *In re Andres R.* (Aug. 23, 2023, E079972) __ Cal.App.5th __ [2023 Cal.App. Lexis 638] [pp. 20-41], *Robert F.*, *supra*, 90 Cal.App.5th at pages 500-504, and *In re Ja.O.* (2023) 91 Cal.App.5th 672, 679-680, review granted July 26, 2023, S280572.  We continue to agree with those holdings and see no reason to repeat our discussions.

### DISPOSITION

The order terminating parental rights is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
J.

I concur:

CODRINGTON _____
Acting P. J.

[*In re G.H.*, E080501]

RAPHAEL, J., Dissenting.

I respectfully dissent. I would apply rule 5.481(a)(1) of the California Rules of Court and *In re Delila D.* (2023) 93 Cal.App.5th 953, which require inquiry of readily available extended family as to whether a child is Indian in every dependency matter where a child is removed from the parents. Instead, the majority follows caselaw that "disapprove[s]" that rule of court (*In re Andres R.* (August 23, 2023, E079972) [2023 Cal.App. Lexis 638, *1]) insofar as it requires inquiry of extended family where the child is removed by warrant, rather than without a warrant. Such a distinction does not make sense and is not what the Legislature intended. (See also *In re V.C.* (September 6, 2023, A166527) [2023 Cal.App. Lexis 687] [following *In re Delila D.*].)

RAPHAEL_____

J.

1